10406.  SELF v. THE STATE.

BROYLES, P. J.  The record in this case contains no evidence authorizing
  the defendant's conviction, and the court erred in overruling the mo-
  tion for a new trial.

             *Judgment reversed.  Bloodworth and Stephens, JJ., concur.*

                    DECIDED JUNE 9, 1919.

Indictment for manufacture of liquor; from Harris superior
court—Judge Howard.  January 27, 1919.

Self was convicted under an indictment charging him with
having manufactured intoxicating liquor.  From the evidence it
appeared, that a few days before December 28, 1917, he moved
to a house from which one Chapman had just moved, and on the
28th the sheriff found in a cane-brake about 200 yards from the
house a smutty kettle, and found in the bank of the creek there
a hole which, he testified, appeared to have been dug for the
kettle to go in, and near it a pile of wood and kindling.  He
testified that he looked for a worm, but did not find a worm or
a furnace, and "there hadn't been any whisky made at that par-
ticular distillery place;" the only thing he "found there to in-
dicate a distillery was a kettle black on the outside, and a hole
that the kettle could have been put in."  He found two barrels
of beer there, which seemed to have been made with sorghum
syrup and to be of the kind used for distillation of whisky.  He
destroyed this beer, and, after going to the house of Babe Oliver,
near there, in a search for whisky, he went to the defendant's
house and told the defendant he had information that some beer
was in the crib there and he wanted to see about it.  The defendant
said, "All right," and told him the beer was there, that he found
it when he moved there.  The defendant took him to the corn-
crib, which was locked, opened the door, and showed it to him.
There was a barrel in the corn-crib and another in the corner of
the stove-room chimney (outside the dwelling house), containing
beer of about the same age and apparently of the same ingredients·
as that found at the place where he had found the kettle.  He
destroyed it and the defendant told him he would find four more
barrels in the swamp east of the house; and he went a distance of
about 250 or 300 yards east of the house and found four barrels
of "pretty much the same beer," except that it was a little sweeter.
He "considered that the beer in the barn and corner of the house

was in the right stage for distillation." The defendant did not tell him whose beer it was, and was not asked whose it was. There was a recently traveled trail in plain view leading from the defendant's barn to the cane-brake where the kettle was found. The witness stated that there was no other path leading from "the distillery." He could not stand at the defendant's house and see "the distillery;" "the distillery was . . ten or fifteen feet in the cane-brake." There was a road leading from Babe Oliver's house to the defendant's and it was "about twice the distance from the distillery to Mr. Oliver's that it was to where Mr. Self lived at that time." The witness said that he tasted the beer, but "not enough to have any effect;" he could tell from tasting it that it was good, strong beer, and had alcohol in it, and would say it was intoxicating, but he did not drink enough to feel it. He considered that it would make whisky; he had found at whisky stills similar beer in that stage. He could not tell what was in the barrel at the corner of the kitchen except that it tasted like syrup beer; it had bran at the bottom of it. No other witness testified for the State.

Chapman testified that when he moved away from the house into which the defendant moved, he (the witness) left "a barrel of stuff" which he had fixed up for his hogs, consisting of water and syrup, corn shorts, "the take out of the kitchen, scraps and things like that," and it was not beer when he left there. He knew nothing of the other beer referred to, or of the kettle and the hole at the cane-brake; he did not go in the cane-brake; he was "out that path every day or two," and he "never saw any smoke in there." When he gave possession of the crib to the defendant, to move corn and stuff there, he (the witness) had possession of a part of the crib; and Will Oliver had a right to go in and use the crib; it was not a locked crib. No path led from the cane-brake to Babe Oliver's house. Will Oliver testified that just before the defendant moved to the house there was some beer in the barn, or "something or other called beer;" he was invited to drink some of it, and at first had an idea that it was beer, but he "found out different" when he tasted it; it was more like sweetened water. Babe Oliver lived about 200 yards from the crib, and was the nearest neighbor to the defendant. Chapman had moved about a half or three quarters of a mile from there. The defendant, in his

statement at the trial, said that when he started to move his fodder into the barn he found the barrel of beer covered up under fodder, and never touched it; that his wife advised him to pour it out, but he replied that he had no right to do so, and that he would keep the barn locked and would find the man it belonged to if he came after it; and soon after he found it the sheriff came, and he told the sheriff about the beer; he did not know of any still on the creek or that there were two barrels of beer down there; he had not been down there in some time.

*A. L. Hardy,* for plaintiff in error.

*C. F. McLaughlin, solicitor-general,* contra.